IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW YORK

L. LEE WHITNUM
    Plaintiff,

vs.

HEARST CORPORATION, STEVEN R. SWARTZ,
STAMFORD ADVOCATE, DANIEL TEPFER, JOHN NICKERSON,
    Defendants.

RECEIVED JUN 1 2 2018 U.S.D.C.

18 CV 5328

## COMPLAINT
## JURY TRIAL DEMANDED

1. Plaintiff, L. LEE WHITNUM ("Whitnum" or "Plaintiff"), sues Defendants, HEARST CORPORATION., d/b/a STAMFORD ADVOCATE ("Advocate"), DANIEL TEPFER ("Tepfer"), and JOHN NICKERSON ("Nickerson") , and STEVEN R. SWARTZ ("Swartz") (collectively referred to as "Defendants") for false, inflammatory, and libelous assertions concerning Plaintiff. The Article dated September 11, 2013 and still posted on the internet, for five years, detailed several falsehoods. The defendants have ignored all requests for removal.

2. Whitnum Plaintiff has suffered extensive damage, including but not limited to damage to her name, personal and business reputation, good will, and economic prospects (including tangible business opportunities).

## PARTIES

3. Plaintiff resides in Fairfield County, Connecticut. She is a two-time political candidate and a current candidate for Governor of the State of Connecticut.

4. Defendant, the Hearst Corporation, is one of the most widely circulated newspapers in the United States and has an expansive presence worldwide, both as a

printed newspaper and through digital content that the Hearst Corporation publishes and disseminates twenty-four hours a day, seven days a week.

5.  The Hearst Corporation owns and operates The *Stamford Advocate* herein called "Advocate", the *Greenwich Time* and several other publications in the State of Connecticut. The Hearst Corporation circulates its newspaper in Connecticut, advertises, promotes, and disseminates its digital content in Connecticut, and otherwise does or solicits business in Connecticut.

6.  At all times material hereto, Defendants Tepfer and Nickerson were reporters for the Hearst Corporation who, while acting within the scope of their employment at the Hearst Corporation, along with and at the direction of the Hearst Corporation edited, shaped, contributed to, and are responsible for the Article at issue in this lawsuit: "Former congressional candidate charged with stalking judge"1 (the "Article"), attached as Exhibit A. Upon information and belief, Tepfer and Nickerson reside in and are citizens of the State of Connecticut, Swartz resides in and is a citizen of the State of New York.

## JURISDICTION

7.  This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants Swartz are citizens of different States and the amount in controversy is more than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Upon information and belief, for purposes of 28 U.S.C. § 1332(c)(1), the Hearst Corporation is a citizen of Delaware and New York because it is incorporated in Delaware and its principal place of business is in New York.

8. The Hearst Corporation sites, including the *Advocate* and *Greenwich Time* are re-published every hour so this is timely.

## GENERAL ALLEGATIONS

9. This litigant is a well-known member of the Peace Community and she has spoken out against the United States funding of the Country of Israel as counter-productive, and she has spoken out against the powerful role of AIPAC in Washington, DC. She has never made an anti-Semitic statement in her life; she is, however, proudly anti-Zionist and anti-AIPAC. For her fact-based, occasional public stands, litigant is not popular with some members of the Jewish Community.

10. Plaintiff has dedicated much of her life to education and politics and she ran for Congress in 2008, Plaintiff focused her efforts on politics and as a teacher. Prior to the publication of the Article, Plaintiff enjoyed a well-established reputation as an educator. And as a competent and reliable employee.

11. As such, Plaintiff was shocked to learn that Defendants published the Article with so many easily verifiable falsehoods. (Exhibit A).

" 1 *See. https://www.stamfordadvocate.com/local/Article/Former-congressional-candidate-charged-with-4803771.php*

12. Tepfer and Nickerson, the authors of the Article, hold themselves out as investigative journalists. The Hearst Corporation has also consistently referenced Tepfer and Nickerson as investigative journalists in its newspaper and on the Internet. Defendants' displayed Reckless and/or intentional disregard for the truth.

13. As described herein, Defendants researched, drafted, published, and disseminated the Article with a reckless and/or intentional disregard for the truth.

Defendants wrote an Article that contained false facts about Whitnum and attributed to Whitnum an imaginary series of events and charges that were incorrect and implied Defendants had spoken to Whitnum but they never did.

14. For five years now this plaintiff has provided emails stating the truth and asked the Defendants for the correction of the Article or the removal of the Article. The defendants, and their legal team have ignored the plaintiff repeatedly.

15. Defendants also embellished and distorted the few pieces of information the *Advocate*'s investigative journalists did turn up in their rush to publish the Article – information that was intended to and did falsely portray Plaintiff as mentally unstable and other proven falsehoods. Defendants' slipshod, reckless, bad-faith reporting is all the worse because the Defendants had more than ample time to adequately research and investigate the facts, but they chose not to. Defendants attributed fabricated charges against the plaintiff published without verifying the fact and worst yet, despite being shown the proof of their mistake or malice, refuse to correct it – year-after-year.

16. Defendants did not speak to Whitnum prior to publication of the Article, and Whitnum gave Defendants no information prior to the Article's publication.

17. Notwithstanding the fact that Defendants did not speak to Whitnum prior to publication, Defendants attributed a fabricated and false statement to Whitnum in the Article.

18. In addition, Defendants printed that "the second-degree stalking, second-degree harassment and disorderly conduct," charges, attributing it to a phone call. They did not speak to Whitnum or confirm the statement attributed to Whitnum prior to publication. Defendants either knew or were aware that it was highly probable that Whitnum was not

charged with stalking based on a phone call, as a simple look at the elements of the charge of stalking reveals that the charge involved "lying in wait." Simple common sense proves that a phone call is not "lying in wait." Knowingly printing half-truths to defame is actionable.

19. Moreover, Defendants had specific and obvious reasons to doubt the charge as the basic element of the charge include lying in wait, which is impossible with a phone call and common sense should have forced them to verify. This litigant believes they completely disregarded and misrepresented the truth and that they knew exactly what they were doing when they manipulated the facts to smear and denigrate this litigant. This is malice.

20. As proof of additional malice, in unmistakably clear defamation, since 2016, the *Advocate*'s has published Articles about other candidates for governor but has refused to list this litigant as a candidate even though she is a registered candidate with the State of Connecticut.

21. Again in contrast to similar candidates, the Hearst Corporation articles about Plaintiff, since 2008, have been almost entirely negative, misleading and/or false, and inflammatory. Indeed, the Article, the gravamen of this case, jumped from topic to topic and was so cursory, inflammatory, and misleading, and false, as to indicate it was published for the sole purpose of smearing Plaintiff's good name.

22. Further, from June 12, 2017 to May, 2018, the Hearst Corporation published *seven* Articles about other candidates in the race but not one about Whitnum, not even granting mention despite being a registered candidate with the Secretary of States' office.

23. Because the Hearst Corporation is the dominant ~~Corporation~~ media voice in Connecticut, and most Connecticut publications are short staffed, the lies, denigration and untruths have been reprinted over-and-over again by other publications who rely on Hearst Corporation for accuracy. The Hearst Corporation in ten years since this litigant began running for public office has never printed an Article that was positive or neutral in tone about Plaintiff. Their tone, and denigration including blatant defamation has been repeated and reprinted and has ruined every aspect of this litigant's life.

24. This litigant, in good faith, met with Thomas Mellana, editor of the *Greenwich Time* in 2017 to request the proven falsehoods be removed. Mellana has made no attempt to address any of this litigant's claims and promptly dismissed her.

25. Still after numerous emails requesting the removal for this defamatory Article or asking that they correct it, On February 18, 2018, the Plaintiff sent a demand letter to Defendant Steven Swartz, Hearst Corporation CEO, requiring them to ~~imCorporationtely~~ retract the Article and further publish a retraction letter containing an apology to Whitnum for intentionally and/or recklessly damaging her reputation. The proof of receipt of the letter by Steven Swartz is annexed (Exhibit B). The letter was ignored.

26. Despite Whitnum's good faith attempts over-and-over again to resolve this matter without litigation, Defendants failed to comply with the demands set forth in the demand letter, and to this date, Defendants have still not made any corrections to the Article which appears on the Internet to this day.

27. Plaintiff continues to suffer the extremely harmful effects of Defendants' actions.

**FIRST CAUSE OF ACTION: DEFAMATION/LIBEL**

28. Plaintiff re-alleges the allegations contained in Paragraphs 1 through 27 as though fully set forth herein.

29. Defendants made and published statements actionable because there are undisclosed sets of defamatory facts, in an intentionally false, malicious, or otherwise defamatory manner (*i.e.*, with knowledge they were false or with reckless disregard for the truth) and distributed same (in the form of the Article) in Connecticut and throughout the rest of the world.

30. The statements made by Defendants had, and continue to have, a defamatory effect, because they have resulted in an adverse effect on the reputation and standing of Plaintiff, employment opportunities, respect and social acceptance by the general public.

31. The statements made by Defendants had, and continue to have, the effect of impeaching Plaintiff's honesty, integrity, mental health, behavior, and the like. Defendants attacked Plaintiff, in which Whitnum takes a great amount of pride, as she has dedicated much of her life to helping others in her teaching, in her political efforts to clean up the Connecticut judiciary, and as a proud member of the Peace Community.

32. Plaintiff's positive character, and Harvard masters education, has opened doors for her in business employment opportunities and Defendants' actions have already caused, and will continue to cause, harm to Whitnum's reputation, which is of utmost importance in her day-to-day dealings.

33. In the Article the defendants specifically and unambiguously stated:

> "Whitnum-Baker, 53, also volunteered that she had never stalked the governor. "That's just not true and besides that was years ago," she added. There is no record of an arrest for that."

> That is false.

34. In the Article the defendants specifically and unambiguously stated:

> "Whitnum-Baker, formerly of Stamford, is charged with second-degree stalking, second-degree harassment and disorderly conduct."

> That is false.

35. In the Article the defendants specifically and unambiguously stated and/or implied:

> "After the judge's husband hung up, the affidavit states that Whitnum-Baker then called the judge's adult son who lives in another state."

> That is false.

36. In the Article the defendants specifically and unambiguously stated and/or implied:

> "I never stalked the judge," said Lisa "Lee" Whitnum-Baker as she left the courthouse. "I did make a call to the judge's home but it was a seven-minute call and that's not stalking," she said. "I know the law."

> That is false.

37. In the Article the defendants specifically and unambiguously stated and/or implied:

> "Whitnum-Baker is awaiting trial in state Superior Court in Norwalk on trespassing charges after Darien police said she tried to "break" her 78-year-old husband, James Baker, out of an assisted living facility there where she claims he is being held prisoner."

> That is false.

38. In the Article the defendants specifically and unambiguously stated and/or implied:

> "She filed a defamation lawsuit against Gov. Dannell P. Malloy in 2010 after he called her an anti-Semite in 2008 -- the case has since been dismissed."

That is inaccurate.

39. In the Article the defendants specifically and unambiguously stated and/or implied:

> "Whitnum-Baker appeared in court Tuesday without a lawyer. Later, she loudly yelled, "You're fired," while on her cellphone to her former lawyer, alarming people in the courthouse lobby."

This is false.

40. In the Article the defendants specifically and unambiguously stated and/or implied:

> "Just before noon, Whitnum's former attorney Andre Cayo said he had talked to Whitnum in Bridgpeort and she would be there by 12:30 p.m. But when Whitnum did not show up in court by that time, Munro entered her judgement to grant Baker's divorce from Whitnum without alimony."

This is inaccurate as this litigant had never asked for alimony in her divorce; it paints an inaccurate picture.

40. Defendants made the defamatory statements throughout all of their four publications of the Hearst Corporation to newspaper subscribers, newspaper purchasers and individuals accessing the Hearst Corporation website and the Article on the Internet. Those individuals include persons located in Fairfield County, Connecticut and throughout the entire world. Many of those individuals who have read the Article include businesspeople who have done, or are contemplating doing, business with Plaintiff.

41. Defendants caused the false and defamatory Article to be published with knowledge of its falsity and/or with reckless disregard for the truth.

42. As a direct and proximate cause of Defendant's defamatory statements, Plaintiff has suffered and continues to suffer compensable and pecuniary damages. Specifically, but without limitation, Plaintiff has experienced and continues to experience false rumors, damage to reputation, and continual questioning from potential employers. Plaintiff lost business opportunities because business associates believed the false statements in the Article and concluded that Whitnum was irresponsible and unstable. Plaintiff has incurred and continues to incur expenses suffered and continues to lose otherwise advantageous relationships with businesspeople based on Defendants' defamatory statements.

**SECOND CAUSE OF ACTION: DEFAMATION/LIBEL PER SE**

43. Plaintiff re-alleges the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

44. The Article was defamatory *per se*, because it contains allegations injurious to Plaintiff in her trade and business.

45. The Article specifically and unambiguously stated and/or implied that Plaintiff does not have the character required to carry out her particular occupation.

46. The Article further specifically and unambiguously stated and/or implied that Plaintiff, who considers her occupations to be politician and teacher, does not have the character to carry out her duties and responsibilities in connection with political pursuits, as an employee and as a teacher.

**THIRD CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

47. Plaintiff re-alleges the allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

48. Despite the obvious fact that a phone call does not merit the charges listed in the Article, despite the obvious fact that despite having the truth pointed out to them, the defendants have continued to fail to remove or fix the Article.

## FOURTH CAUSE OF ACTION: VIOLATION OF FREE SPEECH, THE FIRST AMENDMENT OF U.S. CONSTITUTION.

49. Plaintiff re-alleges the allegations contained in Paragraphs 1 through 48 as though fully set forth herein.

50. This litigant has been vocal against the US funding of Israel as counter-productive. This litigant believes that these defendants, through their words and actions, are motivated to stifle this litigant's First Amendment right to free speech about relevant foreign policy matters. Smear the messenger and you smear the message.

### PRAYER FOR RELIEF

51. WHEREFORE, Plaintiff prays for relief as follows:

   1. An award against Defendants for all damages sustained as a result of their tortious conduct; for every year after the publication for ignoring this litigant's request for removal.

   2. An award against Defendants of punitive damages; for every year this litigant ahs asked for removal

   3. Costs;

   4. Injunctive relief.

   5. All other relief that the Court deems just and proper.

6. Immediate Compensatory and non-defamatory coverage of this litigant' political stands to clean up the Connecticut Judiciary.

7. A monetary award of no less than $1 million for all of the above for every year the defendants refused to remove proven falsehoods and/or defamatory half-truths.

## IMMEDIATE PRELIMINARY INJUNCTIVE RELIEF

52. This litigant is requesting the immediate removal of the Article from the *Hearst*'s website and for all Hearst publications' internet portals.

## DEMAND FOR JURY

Plaintiff, L. Lee Whitnum, hereby requests trial by jury.

Dated: June 12, 2018

Respectfully submitted,

*[signature]*

L. Lee Whitnum